## Page 1

```
IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF GEORGIA
              ATLANTA DIVISION

CYNTHIA PERDUM,           )
                          )
         Plaintiff,       )
                          ) CIVIL ACTION FILE NO.:
   v.                     )
                          ) 1:17-CV-00972-SCJ-JCF
WELLS FARGO HOME          )
MORTGAGE; SHAPIRO         )
PENDERGAST & HASTY, LLP;  )
NATIONWIDE CLEARINGHOUSE, )
INC.; AND US DEPARTMENT   )
OF HOUSING AND URBAN      )
DEVELOPMENT,              )
                          )
         Defendants.      )
```

               DEPOSITION OF
              CYNTHIA D. PERDUM

               December 20, 2018
                  10:21 a.m.
            Monarch Plaza, Suite 1600
            3414 Peachtree Road, NE
                Atlanta, Georgia

         Linda Panzica, CCR No. 2773

## Page 2

APPEARANCES OF COUNSEL

ON BEHALF OF THE PLAINTIFF:

   Pro Se

ON BEHALF OF THE DEFENDANTS:

   Dylan W. Howard, Attorney at Law
   Baker Donelson Caldwell & Berkowitz, P.C.
   Monarch Plaza, Suite 1600
   3414 Peachtree Road, NE
   Atlanta, Georgia 30326
   678.406.8704.443.61
   dhoward@bakerdonelson.com

## Page 3

              INDEX OF EXAMINATION

WITNESS: CYNTHIA D. PERDUM
EXAMINATION                                      PAGE
Cross-Examination By Mr. Howard                    5

              INDEX TO EXHIBITS

DEFENDANT'S     DESCRIPTION                      PAGE
Exhibit 1    Brief in Support of Defendant's       7
             Wells Fargo Home Mortgage
             Division of Wells Fargo Bank,
             Motion to Dismiss Plaintiff's
             Complaint
Exhibit 2    Complaint                            14
Exhibit 3    Tila Request and Other               16
             Regulation Request Under
             Regulation Z
Exhibit 4    NEDVR                                16
Exhibit 5    Defendant Wells Fargo's first        17
             Interrogatories to Plaintiff
Exhibit 6    Defendant Wells Fargo Bank,          23
             N.A.'S First Request for
             Production of Documents to
             Plaintiff

              INFORMATION REQUESTED
              Page          Line
               31            19

## Page 4

DEPOSITION OF CYNTHIA D. PERDUM
   December 20, 2018
   (Reporter disclosure made pursuant to
Article 10.B of the Rules and Regulations of the
Board of Court Reporting of the Judicial Council of
Georgia.)
   MR. HOWARD: All right. This will be the
deposition of Cynthia D. Perdum. The
plaintiff in the case of Cynthia D. Perdum
versus Wells Fargo Home Mortgage, et al.,
currently pending in the United States
District Court for the Northern District of
Georgia, Civil Action File Number
1:17-cv-00972. This deposition was taken
pursuant to notice and pursuant to agreement
of counsel for defendant, Wells Fargo and for
plaintiff, Ms. Perdum.
   Ms. Perdum -- actually, will you swear
the witness, please?
   (Whereupon, the oath was administered to
the witness by the court reporter.)
Whereupon,
         CYNTHIA D. PERDUM,
was called as a witness herein and, first having
been duly sworn, was examined and testified as



CYNTHIA D. PERDUM
CYNTHIA PERDUM vs WELLS FARGO

December 20, 2018
5–8

Page 5

1 follows:
2           CROSS-EXAMINATION
3 BY MR. HOWARD:
4    Q.  Will you state your name for the record,
5 ma'am?
6    A.  Cynthia D. Perdum.
7    Q.  And your current address?
8    A.  It's 5100 King Arthur Lane, Ellenwood,
9 Georgia, 30294.
10   Q.  And that address, the 5100 King Arthur
11 Lane, that's the house that's at issue in this
12 lawsuit, correct?
13   A.  Correct.
14   Q.  Have you ever given your deposition
15 before?
16   A.  No.
17       MR. HOWARD:  Okay.  While just real
18   quickly, it's just me asking questions.  If,
19   at any time you don't understand a question
20   that I ask, you know, stop me, I will be more
21   than happy to rephrase it or explain it.  If
22   you need a break, just let me know, we can
23   take breaks at any time.  I'm hopeful that
24   we'll get through this really quickly and that
25   won't be necessary.  But if you do need to

Page 6

1 take a break.
2       Now you're not represented by a lawyer
3 here today, correct?
4       THE WITNESS:  Correct.
5       MR. HOWARD:  Okay.  If, at any time, you
6  rethink that decision, you can let me know
7  that as well.  And the only thing I will ask
8  is, when I'm asking questions, and you're
9  doing a great job so far, but when I'm asking
10 questions, if you will give an audible yes or
11 no answer, it's just much less confusing for
12 the court reporter.
13      THE WITNESS:  Okay.
14      MR. HOWARD:  Are you -- is there anything
15 that would affect your testimony today in the
16 use of alcohol or drugs or anything along
17 those lines?
18      THE WITNESS:  No.
19      MR. HOWARD:  Silly questions but,
20 unfortunately, I've got to ask silly
21 questions.  But I have yet for anybody to tell
22 me yes to that, which is a good thing.  And
23 you -- let's see, let me mark --
24      THE COURT REPORTER:  Are you starting
25 with 1?

Page 7

1       MR. HOWARD:  One, please.
2       (Whereupon, Defendants' Exhibit Number 1
3 was marked for identification.)
4 BY MR. HOWARD:
5    Q.  Like I said, ma'am, I'm going to try and
6 get through this stuff pretty quickly, so I'm going
7 to --
8    A.  Okay.
9    Q.  -- I will be sort of taking some
10 shortcuts and trying to combine a bunch of
11 documents in a couple of questions versus taking
12 three hours going through everything individually.
13 So if there is anything you don't understand or you
14 think that I'm going too quickly, please feel free
15 to let me know.  If you recognize it, will you
16 identify the document labeled as Defendants'
17 Exhibit 1?
18   A.  It says "Brief in Support of Defendant's
19 Wells Fargo Home Mortgage Division of Wells Fargo
20 Bank, motion to dismiss Plaintiff's complaint."
21   Q.  Okay.  So that document appears to be a
22 copy of Brief in Support of the motion to dismiss
23 that was filed on behalf of Wells Fargo in this
24 lawsuit?
25   A.  Correct.

Page 8

1    Q.  Okay.  Now you purchased the property at
2 5100 King Arthur Lane back in, let's see, 2000.
3 Does that sound correct?
4    A.  Yes.
5    Q.  Will you identify the document attached
6 to Defendants' Exhibit 1 and mark it as Exhibit A,
7 please?
8    A.  It says "limited warranty deed."
9    Q.  If you'll just take a look and confirm
10 that that's a copy of the warranty deed you signed
11 when you purchased the property.
12   A.  I didn't sign it.
13   Q.  Okay.  That's here -- you're right about
14 that.  You wouldn't have signed the deed and do
15 you -- but will you just take a look and see if
16 that appears to be the warranty deed that
17 transferred the property to you when you purchased
18 it?
19   A.  (Viewing) That's what it says.
20   Q.  And then if you will look at the document
21 that's attached to Defendants' Exhibit 1 and mark
22 this Exhibit B, and let me know if you recognize
23 that document.
24   A.  Yes, I do.
25   Q.  And what is that document?



800.211.DEPO (3376)
EsquireSolutions.com

CYNTHIA D. PERDUM  
CYNTHIA PERDUM vs WELLS FARGO  
December 20, 2018  
9–12

Page 9
1   A.  It's a security deed.
2   Q.  Is it the security deed that you executed
3 in relation to the loan that you used to purchase
4 the property at issue?
5   A.  Yes, for Washington Mutual.
6   Q.  And if you will just flip through and let
7 me know if the initials at the bottom of the
8 security deed were discussed and were written by
9 you and whether the signature at the end of the
10 document is your signature, please.
11   A.  Yes.
12   Q.  And at some point, the loan that is
13 secured by the property at 5100 King Arthur Lane,
14 that is the loan at issue in this lawsuit, was
15 assigned to Wells Fargo Bank.  Were you aware of
16 that, ma'am?
17   A.  That's what it says on the assignment.
18   Q.  Okay.  Do you have any reason to believe
19 that the loan wasn't assigned from Washington
20 Mutual to Wells Fargo?
21   A.  I'm not sure, but that's what it says on
22 the assignment.
23   Q.  Okay.  Now, this isn't the first lawsuit
24 that you have filed against Wells Fargo, correct?
25   A.  Correct.

Page 10
1   Q.  If you will review pages 3, 4 -- I guess
2 3 and 4 of Defendants' Exhibit 1, which is a
3 narrative description of prior lawsuits that you
4 have filed and the results of said lawsuits, and
5 let me know if there is anything you see that is
6 incorrect.
7   A.  (Viewing) I'm not going to confirm or
8 deny anything in the motion to dismiss the case
9 that is pending in Federal Court.  This is a
10 document that you submitted, or that Wells Fargo
11 submitted in regard to dismissing the case.  So I
12 confirm or deny anything that is relevant to page 3
13 to page 5.  But everything is documented in terms
14 of lawsuits that I filed against Wells Fargo.
15   Q.  Okay.  What does that mean, "Everything
16 is documented with regard to lawsuits that you
17 filed against Wells Fargo"?
18   A.  So I filed a document that was pertaining
19 to Wells Fargo, it's already documented in civil
20 action court cases.
21   Q.  Okay.  Do you recall filing a lawsuit
22 against Wells Fargo in May, on or about May 3,
23 2013?
24   A.  Where?
25   Q.  In the Superior Court of DeKalb County.

Page 11
1   A.  Regarding?
2   Q.  A lawsuit against Wells Fargo.
3   A.  I'm not sure.  What is it in regard to?
4   Q.  Did you file more than one lawsuit
5 against Wells Fargo on May 3, 2013?
6   A.  I have no idea of what those cases are in
7 regard to.
8   Q.  If you will take a look back at
9 Defendants' Exhibit 1, at the document that has a
10 stamp at the bottom that references Exhibit D.  Let
11 me know if you recognize that document, please.
12   A.  (Viewing) Yes.
13   Q.  And what is that document?
14   A.  It says "Complaint for Wrongful Attempted
15 Foreclosure, Title for our Intention, Injunction of
16 Emotional Distress and Damages.
17   Q.  And is that a document that you prepared?
18   A.  Yes.
19   Q.  And you filed?
20   A.  Yes.
21   Q.  And it references Civil Action File
22 Number 13-cv-5259-7.  Is that a lawsuit that you
23 initiated against Wells Fargo in the Superior Court
24 of DeKalb County?
25   A.  Yes.

Page 12
1   Q.  And ma'am, if you'll take a look at,
2 again, at Defendants' Exhibit 1 at the document
3 that has the stamp at the bottom that references
4 Exhibit E.  Let me know if you recognize that
5 document.
6   A.  Yes.
7   Q.  And what is that document?
8   A.  It was an order.
9   Q.  Do you recall that order did?
10   A.  No, I have to read it.  (Viewing) Yes.
11   Q.  What did that order do?
12   A.  It dismissed the complaint.
13   Q.  And that dismissed the lawsuit that you
14 had filed against Wells Fargo?
15   A.  Yes, it did dismiss it.
16   Q.  And, ma'am, if you will look again at
17 Defendants' Exhibit 1, specifically at a document
18 attached with the stamp that says Exhibit F.
19   A.  Uh-huh.
20   Q.  Let me know if you recognize that
21 document.
22   A.  (Viewing) Uh-huh, yes, I do.
23   Q.  And what is that document?
24   A.  It says "Complaint for Accounting."
25   Q.  Okay.  And is this another lawsuit you



Page 13

1 filed against Wells Fargo?
2   A.  Yes.
3   Q.  And you'll just confirm that it
4 references Civil Action 113-cv-4304, please.
5   A.  Yes.
6   Q.  And I think this is the last one for this
7 series of questions.  If you will look at
8 Defendants' Exhibit 1 again, ma'am, specifically
9 the document with a stamp on the bottom right-hand
10 side that says Exhibit G.
11   A.  Yes.
12   Q.  Let me know if you recognize that
13 document.
14   A.  (Viewing) Yes.
15   Q.  Will you tell me what that document is?
16   A.  It's just an order.
17   Q.  And if you review it, can you let me know
18 what that order did?
19   A.  (Viewing) You have given me a whole bunch
20 of orders and documents to review, but the problem
21 is, is that there were -- there were different
22 defendants relating to all these orders.
23   Q.  Okay.
24   A.  So this is just an order that dismissed
25 the case.

Page 14

1   Q.  Okay.  So the document we're referring
2 to, which is marked as Exhibit G to Defendants'
3 Exhibit 1 is an order dismissing the lawsuit, which
4 is referenced as Civil Action File Number
5 113-cv-4304, correct?
6   A.  Correct.  But this is attached to the
7 document for the civil action that's currently
8 pending in court.
9   Q.  Correct.  Aside from the action that's
10 currently pending in court, do you have any
11 lawsuits against Wells Fargo that are currently
12 pending?
13   A.  No.
14   Q.  So any lawsuit that you had filed aside
15 from the one that we're here on today that's
16 currently pending would have been resolved or
17 dismissed in some capacity, correct?
18   A.  There's only one lawsuit right now that
19 is pending.
20   Q.  Correct.  Thank you.
21       MR. HOWARD:  Mark that as Defendants'
22 Exhibit 2, please.
23       (Whereupon, Defendants' Exhibit Number 2
24 was marked for identification.)
25 BY MR. HOWARD:

Page 15

1   Q.  And Ms. Perdum, if you'll review what's
2 been just -- review what has been marked as
3 Defendants' Exhibit 2 and let me know if you
4 recognize that?
5   A.  (Viewing) Yes.  That's the complaint that
6 I filed.
7   Q.  And that's the complaint in the currently
8 pending lawsuit, correct?
9   A.  Correct.
10   Q.  Now, if you will look at page 10 of
11 Defendants' Exhibit 2, specifically at paragraph
12 25, it references an NEDVR; is that correct?
13   A.  Yes.
14   Q.  And can you tell me what that stands for?
15   A.  Notice of error of debt validation
16 request.
17   Q.  Okay.  And is it fair to say that that
18 would also be called a qualified written request?
19   A.  Yes.
20   Q.  And if you'll take a quick look at pages
21 10, 11, and 12 of Defendants' Exhibit 2.  It
22 references two NEDVRs, one that is referred to as
23 the NEDVR and one that's referred to as NEDVR-2,
24 correct?
25   A.  Correct.

Page 16

1   Q.  And there is no NEDVR-3 or NEDVR-4 that's
2 referenced anywhere in the complaint, correct?
3   A.  That, I'm not aware of.
4       (Whereupon, Defendants' Exhibit Number 3
5 was marked for identification.)
6 BY MR. HOWARD:
7   Q.  Ms. Perdum, if you'll look at Defendants'
8 Exhibit 3?
9   A.  Uh-huh.
10   Q.  Can you identify Defendants' Exhibit 3,
11 please?
12   A.  It's says Tila Request and Other
13 Regulation Request Under Regulation Z.
14   Q.  Is that one of the NEDVRs that's
15 referenced in the complaint?
16   A.  Yes.
17   Q.  Okay.  If you'll mark that.  If you'll
18 just status that.  Are there any DVR that's
19 referenced in the complaint.
20   A.  Yes, it is.
21       MR. HOWARD:  If you'll mark that as
22 Defendants' Exhibit 4.
23       (Whereupon, Defendants' Exhibit Number 4
24 was marked for identification.)
25 BY MR. HOWARD:



CYNTHIA D. PERDUM
CYNTHIA PERDUM vs WELLS FARGO

December 20, 2018
17–20

Page 17

1  Q.  And one more time then, just for the
2 record, I know it's silly.  If you'll just confirm
3 that Defendants' Exhibit 4 is the other NEDVR
4 that's reference in the complaint.
5  A.  Correct.  Yes, it is.
6  Q.  Okay.  So Exhibits 3 and 4 are the only
7 NEDVRs, or qualified written requests, that are
8 identified in the complaint?
9  A.  I'm not sure exactly what is in the
10 complaint.  As far as I know, I had listed other
11 qualified written requests issues, but these are
12 some of the exhibits that I put in the complaint.
13        (Whereupon, Defendants' Exhibit Number 5
14 was marked for identification.)
15 BY MR. HOWARD:
16  Q.  Okay.  Ms. Perdum, if you'll look at
17 Defendants' Exhibit 5, please.
18  A.  Okay.  (Viewing) It says Defendant Wells
19 Fargo's first interrogatories to plaintiff.
20  Q.  Okay.  If you look at the -- may we go
21 off the record, please?
22        (...Off the record...)
23 BY MR. HOWARD:
24  Q.  Ms. Perdum, so Defendants' Exhibit 5 is a
25 copy of your responses to Defendant Wells Fargo

Page 18

1 Bank first interrogatories to plaintiff, correct?
2  A.  Correct.
3  Q.  And if you will look at the paragraph
4 marked as Number 6 and the response following it in
5 Defendants' Exhibit 5, please?
6  A.  Okay.
7  Q.  And I'm going to paraphrase, but I would
8 just like you to confirm that what I'm paraphrasing
9 is generally accurate.  Paragraph 6 of Defendants'
10 Exhibit 5 asks for you to describe in detail all
11 damages you claim you suffered as a result of Wells
12 Fargo alleged failure to respond to qualified
13 written requests.
14  A.  Okay.
15  Q.  And you just confirmed that that's the
16 substance of that request?
17  A.  Yes.
18  Q.  Okay.  And the response beneath paragraph
19 6, is a typed-out response that you prepared,
20 correct?
21  A.  Correct.
22  Q.  And take some time to review it, if you
23 would like, but if you will just confirm that that
24 is a full and accurate response?
25  A.  Yes.

Page 19

1  Q.  And then, the same set of questions for
2 paragraph 7 of Defendants' Exhibit 5.  If you will
3 review it and confirm that it asked you to
4 identified and describe all evidence in your
5 possession that evidences damages you claim you
6 have suffered as a result of Wells Fargo's alleged
7 failure to respond to a qualified written request.
8  A.  (Viewing) Yeah, this is all the
9 information I have in my possession.
10  Q.  Okay.  Thank you.  So the typewritten
11 answer -- the typewritten response after paragraph
12 7 of Defendants' Exhibit 5 is a full and complete
13 answer?
14  A.  Yeah, because that's the only thing I
15 have in my possession.  I don't have any doctor's
16 information in my possession.
17  Q.  Okay.  Now, aside from doctor's
18 information, are there other categories of evidence
19 that you think might be out there that's not in
20 your possession?
21  A.  No.
22  Q.  Okay.  If you will review -- if you would
23 just read paragraph 12 of Defendants' Exhibit 5,
24 please?
25  A.  "Identify all correspondence to Wells

Page 20

1 Fargo that you contend qualifies as a qualified
2 written request under the Real Estate Settlement
3 Procedures Act."
4  Q.  Thank you, ma'am.  If you'll read your
5 typewritten response to paragraph 12.
6  A.  It says "The Court has determined that --
7 determined the RESPA qualifications."
8  Q.  Okay.  And is that response a reference
9 to the report and recommendation that the
10 magistrate judge entered in this case?
11  A.  Yes..
12  Q.  Okay.  Make sure to mark that.  Sorry,
13 for the record, if you'll just -- I just made a
14 little stray mark.  If you'll just confirm that's a
15 stray mark on page 9.
16  A.  Yeah, that's a little stray mark.
17  Q.  Okay.  Good.  So it's your understanding
18 sitting here today that, if in the report and
19 recommendation, the magistrate judge determined a
20 letter to be a RESPA request, then you don't
21 dispute that determination?
22  A.  Whatever the judge, with his report and
23 recommendations, I did not object to it.
24  Q.  Okay.  And is there -- do you recall
25 anything sitting here today that you disagreed with



800.211.DEPO (3376)
EsquireSolutions.com

CYNTHIA D. PERDUM  
CYNTHIA PERDUM vs WELLS FARGO  
December 20, 2018  
21–24

Page 21

1 in the report and recommendation?
2   A.  I did not file anything to object to the
3 report and recommendations.
4   Q.  Okay.  So can I take that as an
5 indication that you didn't find anything that was
6 objectionable or to which you could have objected
7 to the report and recommendation?
8   A.  I can't say that.  But what I can say is
9 that I didn't file anything to refute the judge's
10 report and recommendation.
11   Q.  Okay.  Did you disagree with the
12 magistrate judge's finding that the April 7, 2016
13 letter, which we have marked as Defendants' Exhibit
14 3, qualified as a qualified written request, or may
15 have qualified as a qualified written request?
16   A.  Can you repeat the question?
17   Q.  Yeah, that was a terrible question.
18   A.  Yeah, that's okay.
19   Q.  Let me rethink that for a minute.  You
20 know, I'll come back to that if I need to.
21       Let's see.  If you will take a quick look at
22 paragraph 19, Defendants' Exhibit 5, please.
23   A.  Okay.
24   Q.  Will you read that paragraph?
25   A.  It says "State all facts and describe all

Page 22

1 evidence that demonstrate that you actually mailed
2 the April 7, 2016 letter to Wells Fargo."
3   Q.  And then if you will read your
4 typewritten response to that paragraph, please?
5   A.  And I said, "Referred to the verified
6 complaint with exhibits filed."
7   Q.  Okay.  Thank you, ma'am.  So to your
8 knowledge sitting here today, is that a complete
9 and accurate response?
10   A.  With the civil action currently pending,
11 yes.
12   Q.  Okay.  So to the extent that you're in
13 possession of any evidence of mailing of that April
14 7, 2016 to Wells Fargo, it would be included in the
15 verified complaint in the exhibits?
16   A.  Yes.
17   Q.  Okay.  Thank you.  Then, ma'am, same
18 questions with regard to paragraph 20 Defendants'
19 Exhibit 5.  If you will just read it real quickly,
20 please?
21   A.  "State all facts and describe all
22 evidence that demonstrates that Wells Fargo
23 actually received the April 7, 2016 letter at issue
24 in this lawsuit."
25   Q.  And if you will confirm, ma'am that your

Page 23

1 response to that request refers back to the
2 verified complaint and exhibits?
3   A.  Okay, yes.  It says "Refer to the
4 verified complaint with exhibits."  And then I
5 also included cases that was filed with the
6 Consumer Financial Protection Bureau."
7   Q.  Okay.
8   A.  And through the Comptroller's office.
9   Q.  Were those cases -- were documents from
10 those cases included as exhibits or are those
11 separate from the exhibits?
12   A.  They may be there -- everything that
13 was -- this may be after --
14   Q.  Okay.
15   A.  -- the lawsuit was filed or proceeding
16 the lawsuit, I'm not sure.  But any cases dealing
17 with the Consumer Financial Protection Bureau,
18 they're actually in the verified complaint prior to
19 the lawsuit.
20       (Whereupon, Defendants' Exhibit Number 6
21 was marked for identification.)
22 BY MR. HOWARD:
23   Q.  Okay.  Thank you.  Ms. Perdum, if you'll
24 look at Defendants' Exhibit 6.  Just flip through
25 it and confirm that it is your responses to Wells

Page 24

1 Fargo first request for production of documents,
2 please?
3   A.  (Viewing) Okay, yes.
4   Q.  Thank you.  If you will read paragraph 15
5 of Defendants' Exhibit 6, please?
6   A.  Okay.  It says "All documents showing,
7 proving, or otherwise relating to the your claim
8 that Wells Fargo is liable to you under the Real
9 Estate Settlement Procedures Act."
10   Q.  Thank you, ma'am.  And then read your
11 response to Paragraph 15, please?
12   A.  "Plaintiff objects to this request under
13 grounds of work product.  See this court's R&R,
14 report and recommendation."
15   Q.  Okay.  So it would be accurate to say
16 that this response indicates that you believe that
17 the documents demonstrating the basis -- let me
18 start over.  That was going to get real confusing
19 really fast.
20       So paragraph 15, your response to paragraph 15
21 of Defendants' exhibit 6 indicates that you belief
22 that the documents evidencing that Wells Fargo is
23 liable to you under the Real Estate Settlement
24 Procedure's Act are contained in the court's report
25 and recommendation, true?



800.211.DEPO (3376)  
EsquireSolutions.com

CYNTHIA D. PERDUM
CYNTHIA PERDUM vs WELLS FARGO

December 20, 2018
25–28

Page 25

1  A.  It's contained in the report and
2 recommendation and beyond complaint, after the
3 complaint was filed.
4  Q.  Okay. So there may be documents that
5 happened after the complaint was filed that you
6 think evidence some liability from Wells Fargo?
7  A.  Correct.
8  Q.  Okay. But aside from documents or things
9 that may have happened after your complaint was
10 filed, anything that happened before the complaint
11 was filed would be referenced in the report and
12 recommendation?
13  A.  That would be referenced in the report
14 and recommendation, the Consumer Financial
15 Protection Bureau as well as the Office of Control
16 and Currency.
17  Q.  Okay. And you're referencing the
18 Consumer Financial Protection Bureau and the Office
19 of the Comptroller of the Currency. Are those
20 references related -- are those references with
21 regard to claims that arose prior to the lawsuit
22 being filed? Are those included as exhibits to the
23 admitted complaint? I'm sorry, to the complaint?
24  A.  These issues stem from prior to the
25 complaint being filed and after the complaint was

Page 26

1 filed.
2  Q.  Are there documents in your possession
3 that relate to a CFP -- the CFPB's involvement in
4 your dispute with Wells Fargo that are prior to the
5 lawsuit being filed that are not attached to the
6 complaint?
7  A.  Prior to the lawsuit being filed, no.
8  Q.  Okay. So every document with regard to
9 the CFPB and their involvement in your complaint
10 with Wells Fargo prior to the lawsuit being filed
11 was attached to your complaint?
12  A.  From -- probably from 2015 to 2016.
13  Q.  Okay. So there may have been documents
14 with regard to the CFPB for claims you have against
15 Wells Fargo that existed prior to 2015 that weren't
16 included in the complaint.
17  A.  No.
18  Q.  Okay. I guess I'm misunderstanding.
19  A.  So the complaint was filed in 2017?
20 2017.
21  Q.  Okay.
22  A.  And so anything prior to from 2015 to
23 2017 was in the complaint.
24  Q.  Okay.
25  A.  So anything after 2017, the complaint was

Page 27

1 filed. I still didn't get any resolution. So
2 Consumer Financial Protection Bureau has that
3 information, OCC has that information. So all of
4 the federal regulatory agencies have that
5 information.
6  Q.  Okay. Do the federal regulatory agencies
7 have information or documents that you have --
8 sorry, let me rephrase.
9   Do the federal regulatory agencies have any
10 documentation that was created or occurred prior to
11 the filing of this lawsuit that you didn't attach
12 to the lawsuit with regard to your claims against
13 Wells Fargo?
14  A.  I can't answer that for certain. I don't
15 know.
16  Q.  Okay. If you will review and then read
17 for me paragraph 16 of Defendants' Exhibit 6,
18 please?
19  A.  Okay. "Our documents that demonstrate
20 that you actually sent the April 7, 2016 letter at
21 issue in this lawsuit to Wells Fargo. Response:
22 Plaintiff objects to the request on the grounds
23 that -- on the grounds of work product. Please
24 review verified complaint."
25  Q.  Okay. Thank you. Are you aware of any

Page 28

1 evidence that you sent the April 7, 2016 letter to
2 Wells Fargo that was not included in the verified
3 complaint?
4  A.  Can you repeat the question?
5  Q.  In paragraph 16 of Defendants' Exhibit 6,
6 my client asked for all documents that you actually
7 sent the April 7, 2016 letter to Wells Fargo.
8  A.  Right.
9  Q.  Your response was, "Review the verified
10 complaint." I just want to confirm, are there any
11 documents that you did not attach to the verified
12 complaint that demonstrate that you sent the April
13 7, 2016 letter.
14  A.  Still confused.
15  Q.  No problem. I confuse myself sometimes.
16  A.  So any documents that I sent to Wells
17 Fargo, I sent to all the federal Regulatory
18 agencies. So any documents that I sent to Wells
19 Fargo in regards to the low, in regards to
20 anything, I sent to all the regulatory agencies.
21  Q.  Okay. Well, right now, ma'am, I'm just
22 asking about the April 7, 2016 letter, which we
23 have marked as Defendants' Exhibit 3.
24  A.  Uh-huh. Yes.
25  Q.  Are you aware of any evidence that that



800.211.DEPO (3376)
EsquireSolutions.com

Page 29

1 letter was actually sent to Wells Fargo that you
2 did not include as an exhibit to the verified
3 complaint?
4      A.   Everything that was in the verified
5 complaint as Exhibit 3 is sent out to the Consumer
6 Financial Protection Bureau and all of the other
7 regulatory agencies.  These listed are the Consumer
8 Financial Protection Bureau case numbers.
9      Q.   Okay.  That is close but not quite what
10 I'm asking.  I just want to make sure we understand
11 each other.
12          In looking back at paragraph 16 of Defendants'
13 Exhibit 6.
14     A.   Uh-huh.
15     Q.   We requested all documents that
16 demonstrate that you actually sent the April 7,
17 2016 letter.  In your response, you said, "Please
18 review the verified complaint."  So I just want to
19 confirm that that's an accurate response and that,
20 to the extent that you have the documents that
21 demonstrate you actually sent the April 7, 2016
22 letter, that those are referenced or included as
23 exhibits to the verified complaint.
24     A.   Okay.  So are you asking if I sent it by
25 postage?

Page 30

1      Q.   I'm just asking if that would be one
2 example of evidence that you sent the letter.  I'm
3 just asking --
4      A.   I sent the letter.  There's no question
5 about that.  I sent the letter.
6      Q.   I understand that's your position.  But
7 we're just talking about evidence aside from your
8 testimony, because I understand your testimony that
9 you sent the letter.  And in your responses to the
10 request for production, you just said, "Please
11 review the verified complaints."  So I just want to
12 confirm that -- that any evidence that you actually
13 sent the letter, aside from your testimony, was
14 included or referenced in the verified complaint.
15     A.   If Wells Fargo is stating that they never
16 received the letter, the only thing they had to do
17 is come and ask me for the letter, and I was more
18 than happy to give them the letter.  So they
19 received the letter, they have the letter,
20 everything went to the Consumer Financial
21 Protection Bureau.  And that's it.
22     Q.   I understand.  But I just, again, just
23 want to confirm the accuracy of the response as far
24 as some sort of written evidence that the letter
25 was mailed beyond your testimony.  Is there any

Page 31

1 document like that you're aware of that's not
2 included as an exhibit or referenced in the
3 complaint?
4      A.   Are you saying certified return receipt?
5      Q.   Anything like that.  Any evidence of
6 mailing.
7      A.   I'm not sure.  I'm not sure.
8      Q.   Okay.  But sitting here today, you're not
9 aware of any evidence that you haven't included in
10 the complaint or provided to me.
11     A.   If you're asking about a certified letter
12 return receipt, I'm not sure if I have that.  I
13 have to go back and check.  But what I'm saying to
14 you is that it was mailed out.
15     Q.   Okay.
16     A.   And it was mailed -- it was mailed out
17 and also it was sent electronically to Consumer
18 Financial Protection Bureau.
19     Q.   I understand.  So will you please go see
20 if you have any certified return receipt cards or
21 anything like that?
22     A.   I will.
23     Q.   Okay.  And if you do have anything like
24 that, will you produce a copy to me, please?
25     A.   Yes.

Page 32

1          (...Cell phone sounds...)
2          THE WITNESS:  I'm sorry.
3          MR. HOWARD:  No, problem at all.
4          THE WITNESS:  Can we take a break?  I got
5     to use the restroom.
6          MR. HOWARD:  Yes.  Let's go off the
7     record.  Absolutely, ma'am, yes.
8          (Whereupon, a brief recess was taken from
9 11:05 a.m. until 11:10 a.m. after which the
10 proceeding resumed.)
11 BY MR. HOWARD:
12     Q.   You took the loan at issue out back in
13 2000, correct?
14     A.   Correct.
15     Q.   Is it your contention sitting here today
16 that you've made every payment owed on the loan to
17 date?
18     A.   No, I didn't make every payment owed on
19 the loan to date.
20     Q.   Do you remember the last time you made a
21 payment on the loan at issue?
22     A.   No.
23     Q.   Okay.  But it was not in 2018?
24     A.   No.
25     Q.   Okay.



Page 33

```
 1    A.   Because you wouldn't give me my --
 2 because Wells Fargo would not give me a
 3 modification.
 4    Q.   Okay.
 5         MR. HOWARD:  All right, ma'am, that's all
 6 I have.
 7         THE WITNESS:  That's it?
 8         MR. HOWARD:  Yep, that's it.
 9         THE WITNESS:  That was short.
10         (Whereupon, the above-styled matter
11 concluded at 11:14 a.m. Eastern Standard Time.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 34

CERTIFICATE

STATE OF GEORGIA
COUNTY OF FULTON

I Linda Panzica, Certified Court Reporter and Notary Public, within and for the State of Georgia, do hereby certify:

CYNTHIA D. PERDUM, the witness whose examination is hereinbefore set forth, was first duly sworn by me and that this transcript of said testimony is a true record of the testimony given by said witness.

The above certification is expressly withdrawn upon the disassembly or photocopying of the foregoing transcript, unless said disassembly or photocopying is done under the auspices of Esquire Deposition Solutions and the signature and original seal is attached thereto.

I further certify that I am not relative, employee, attorney, or counsel of any of the parties; nor am I financially interested in the outcome of this matter.

This 27th day of December, 2018.

Linda Panzica
Certified Court Reporter
License No. 2773

Page 35

DISCLOSURE

Pursuant to Article 10.B of the Rules and Regulations of the Board of Court Reporting of the Judicial Council of Georgia, I make the following disclosure:

I am a Georgia Certified Court Reporter. I am here as an independent contractor of Esquire Deposition Solutions.

Esquire Deposition Solutions was contacted by the offices of BAKER DONELSON BEARMAN, CALDWELL & BERKOWITZ, PC to provide court reporting services for this deposition. I am not taking this deposition under any contract that is prohibited by O.C.G.A. § 15-14-37 (a) and (b). I have no contract or agreement to provide court reporting services with any party to the case, any counsel in the case, or any court reporter or reporting agency from whom a referral might have been made to cover this deposition. Esquire Deposition Solutions will charge its usual and customary rates to all parties in the case, and a financial discount will not be given to any party to this litigation.

This 20th day of December 2018.

Linda Panzica, CCR
Certified Court Reporter
License Number 2773

Page 36

DEPOSITION ERRATA SHEET

Our Assignment No:   J3431068

Case Caption: Cynthia Perdum vs. Wells Fargo Home Mortgage; Shapiro Pendergast & Hasty, LLP; Nationwide Clearinghouse, Inc.; and US Department of Housing and Urban Development

DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I have read the entire transcript of my Deposition taken in the above-captioned matter or the same has been read to me and the same is true and accurate, save and except for changes and/or corrections, if any, as indicated by me on the DEPOSITION ERRATA SHEET hereof, with the understanding that I offer these changes as if still under oath. Signed on the day of

_____ 2019.

Cynthia D. Perdum



Page 37

DEPOSITION ERRATA SHEET

Page No.      Line No.      Change to:

Reason for change:

Page No.      Line No.      Change to:

Reason for change:

Page No.      Line No.      Change to:

Reason for change:

Page No.      Line No.      Change to:

Reason for change:

Page No.      Line No.      Change to:

Reason for change:

Page No.      Line No.      Change to:

Reason for change:

Page No.      Line No.      Change to:

Reason for change:

SIGNATURE:                  DATE:

           Cynthia D. Perdum

Page 38

DEPOSITION ERRATA SHEET

Page No.      Line No.      Change to:

Reason for change:

Page No.      Line No.      Change to:

Reason for change:

Page No.      Line No.      Change to:

Reason for change:

Page No.      Line No.      Change to:

Reason for change:

Page No.      Line No.      Change to:

Reason for change:

Page No.      Line No.      Change to:

Reason for change:

Page No.      Line No.      Change to:

Reason for change:

SIGNATURE:                  DATE:

           Cynthia D. Perdum

