# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CYNTHIA PERDUM, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. |
| | : 1:17-CV-00972-SCJ-JCF |
| WELLS FARGO HOME MORTGAGE, | : |
| Defendant. | : |

## **FINAL REPORT AND RECOMMENDATION**

This case is before the Court on the Motion For Summary Judgment filed by Defendant Wells Fargo Home Mortgage ("Wells Fargo"). For the reasons that follow, it is **RECOMMENDED** that Wells Fargo's Motion For Summary Judgment (Doc. 90) be **DENIED**.

## **Procedural Background**

Plaintiff, proceeding *pro se*, initiated this lawsuit in the Superior Court of DeKalb County on February 13, 2017. (Doc. 1-1 at 1). In her Complaint, she alleged nine claims against Wells Fargo, Shapiro, Pendergast & Hasty, Nationwide Title Clearing, Inc. ("Nationwide"), and the United States Department of Housing and Urban Development. (*See generally id.*). The case was removed to this Court on March 6, 2017. (*See* Doc. 1). In a previous Report and Recommendation ("R&R") entered on December 8, 2017, the undersigned recommended that Nationwide's

1

summary judgment motion be granted, that Shapiro, Pendergast & Hasty's motion to dismiss be granted, and that Wells Fargo's motion to dismiss be granted in part and denied in part. (Doc. 43 at 82). Specifically, the undersigned recommended that all Plaintiff's claims against Wells Fargo be dismissed with the exception of a claim brought under the Real Estate Settlement Procedures Act ("RESPA"). (*Id.*). The undersigned determined Plaintiff satisfactorily alleged that Wells Fargo violated RESPA when it failed to respond to a letter she sent requesting information about her loan, referred to by the statute as a qualified written request ("QWR"). (*Id.* at 56-58). Finally, the R&R foreclosed statutory damages under RESPA because Plaintiff failed to plausibly allege that Wells Fargo's violation constituted a "pattern or practice of noncompliance." (*Id.* at 58-59 (quoting 12 U.S.C. § 2605(f)(1)(B)). On February 12, 2018, United States District Judge Steve C. Jones adopted the undersigned's R&R. (Doc. 50).

On February 15, 2019, Wells Fargo filed the instant Motion For Summary Judgment as to Plaintiff's remaining RESPA claim (Doc. 90-1) along with a brief in support of the motion (Doc. 90-1), Statement Of Material Facts (Doc. 90-2 ("Def. SMF")), exhibits (Docs. 90-3 through 90-12), and Plaintiff's deposition (Doc. 90-13 ("Pl. Dep.")). Plaintiff responded to the motion on April 4, 2019 (Doc. 99). Plaintiff filed a brief (Doc. 99-1), responses to Wells Fargo's Statement Of Material Facts (Doc. 100), her own "Additional Material Facts" (*id.*), exhibits (Doc. 99-1 at 29-85),

and her own affidavit (Doc. 99-2). Wells Fargo timely filed a reply brief on April 18, 2019. (Doc. 101). Wells Fargo's motion is ripe for consideration.

## Discussion

### I. Facts[1]

The facts of this matter as presented by the parties are fairly brief given only one of Plaintiff's claims remains. On November 22, 2002, Cynthia D. Perdum ("Plaintiff") refinanced her existing home loan with a new loan in the amount of $121,439.00 from Washington Mutual Bank, FA ("Washington Mutual"), which was secured by residential property by way of a security deed executed by Plaintiff in favor of Washington Mutual. (Def. SMF ¶ 2; Doc. 90-4; *see also* Doc. 43 at 2). On December 2, 2006, Washington Mutual assigned the security deed to Wells Fargo. (Def. SMF ¶ 4; Doc. 90-5). Plaintiff does not remember when she stopped making payments on the loan. (Pl. Dep. 32:15-19).

Plaintiff attaches two letters she claims she sent to Wells Fargo requesting information about her loan on April 7, 2016 and July 8, 2016. (*See* Doc. 100 ¶ 13; Doc. 1-1 ¶ 38; Doc. 1-3 at 21-34). Plaintiff alleges that those letters constituted

---

[1] These facts are taken from Wells Fargo's Statement Of Material Facts (Doc. 90-2), Wells Fargo's exhibits (Docs. 90-3 through 90-12), Plaintiff's responses to Wells Fargo's Statement Of Material Facts (Doc. 100), Plaintiff's "Additional Material Facts" (*id.* at 4-5), Plaintiff's deposition (Doc. 90-13), Plaintiff's exhibits (Doc. 99-1 at 29-85), Plaintiff's affidavit (Doc. 99-2), and undisputed record evidence.

QWRs[2] to which Wells Fargo was required to respond under RESPA. (Doc. 1-1 ¶¶ 138-148). Plaintiff's April 2016 QWR letter contains several requests about Plaintiff's loan, which are discussed in greater detail below. (*See* Doc. 99-1 at 21-23). Wells Fargo sent several items of correspondence to Plaintiff in reference to her requests, but none of those letters specifically refers to Plaintiff's April 2016 QWR, and Wells Fargo does not assert that it responded to that QWR. (*See id.* at 29-48, 54).

## II. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by[] . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1). The moving party has an initial burden of informing the court of the basis for the motion and showing that there is no genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986); *see also Arnold v. Litton Loan*

---

[2] As explained above, the previous R&R adopted by Judge Jones dismissed Plaintiff's claim that her July 2016 letter constituted a QWR as defined by RESPA. (*See* Doc. 43 at 55-56).

*Servicing*, *LP*, No. 1:08-cv-2623-WSD, 2009 U.S. Dist. LEXIS 119787, at *10 (N.D. Ga. Dec. 23, 2009) ("The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.") (citing *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999)).

Furthermore, "nonmoving part[ies], opposing a motion for summary judgment supported by affidavits[,] cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991), *cert. denied*, 506 U.S. 952 (1992*); see also* FED. R. CIV. P. 56(c)(1)(B), (c)(4). The evidence "cannot consist of conclusory allegations or legal conclusions." *Avirgan*, 932 F.2d at 1577. Unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment. *See Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 714 (11th Cir. 1984).

For a dispute about a material fact to be "genuine," the evidence must be such that "a reasonable jury could return a verdict for the nonmoving part[ies]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). It is not the court's function at the summary judgment stage to determine credibility or decide the truth of the matter. *Id.* at 249,

255. Rather, "[t]he evidence of the nonmovant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id.* at 255.

## III.  Plaintiff's RESPA Claim

Wells Fargo moves for summary judgment on Plaintiff's remaining RESPA claim, which alleges that Wells Fargo violated 12 U.S.C. § 2605(k) by failing to respond to a QWR letter, sent on April 7, 2016, within the time required by the statute. (Doc. 1-1 ¶¶ 37, 38, 143, 144; Doc. 1-3 at 21-23). "RESPA was enacted to provide consumers with more information on the nature and costs of real estate transactions and prevent abuses and unnecessarily high costs." *Gillings v. Nationstar, LLC*, Civil Action No. 1:15-CV-01074-CC-LTW, 2016 U.S. Dist. LEXIS 183718, at *17 (N.D. Ga. Jan. 25, 2016) (citing *McCarley v. KPMG Intern.*, 293 Fed. Appx. 719, 722 (11th Cir. 2008) (unpublished decision)). "Among other things, RESPA requires, in relevant part, that a loan servicer respond to a QWR from a borrower if that QWR meets certain requirements." *Id.*, 2016 U.S. Dist. LEXIS 183718, at *18. "To state a RESPA claim for failure to respond to a QWR, Plaintiff must sufficiently allege: '(1) [Wells Fargo] is a loan servicer; (2) [Wells Fargo] received a QWR from Plaintiff; (3) the QWR relates to servicing of a mortgage loan; (4) [Wells Fargo] failed to respond adequately; and (5) Plaintiff is entitled to actual or statutory damages.' " *Wesner v. OCWEN Loan Servicing, LLC*, Case No. 16-81476-CIV-MARRA, 2016 U.S. Dist. LEXIS 157969, at *6-7 (S.D. Fla. Nov. 14,

2016) (quoting *Porciello v. Bank of Am., N.A.*, No. 8:14-cv-1511-T-17AEP, 2015 U.S. Dist. LEXIS 26002, at *7 (M.D. Fla. Mar. 3, 2015)).

Wells Fargo argues that there is no issue of fact to be tried on Plaintiff's claim because "she has failed to meet her burden of proving that Wells Fargo received the [QWR] Letter." (Doc. 90-1 at 7). Specifically, Wells Fargo asserts that Plaintiff has failed to point to evidence that it received Plaintiff's April 2016 letter. (*Id.* at 8 ("There is neither evidence in the record of mailing nor evidence of Wells Fargo's receipt of the Letter.")). Wells Fargo also argues that even if Plaintiff were able to prove that Wells Fargo received the QWR letter, she still has not demonstrated evidence that its failure to respond caused her damages. (*Id.* at 9-10). The Court finds Wells Fargo's arguments unpersuasive because issues of fact exist on whether it received her April 2016 QWR and on whether its alleged failure to respond caused her damages.

### A. Wells Fargo's Receipt Of Plaintiff's QWR

With respect to Wells Fargo's first argument, Plaintiff testified under oath that she sent the April 2016 QWR to Wells Fargo. (Pl. Dep. at 30:4-5). A copy of Plaintiff's QWR letter is attached to her Complaint. (Doc. 1-3 at 21-23). As discussed in the undersigned's previous R&R, Plaintiff's attached April 2016 contains the requisite information to constitute a valid QWR, such as her beliefs about why her account is in error. (*See* Doc. 43 at 56-57). Wells Fargo does not

7

dispute the validity of Plaintiff's QWR nor does Wells Fargo point to evidence that the address it denotes was incorrect. The Court therefore finds that Plaintiff has pointed to "competent evidence" that she sent her valid April 2016 QWR to Wells Fargo. *McLean*, 2008 U.S. Dist. LEXIS 101275, at *19 (finding the plaintiffs provided "competent evidence that they mailed the [QWR] Letter to GMAC's [] address" where the plaintiffs alleged they placed the QWR letter in the regular U.S. Mail and "GMAC has not shown that the address on the plaintiffs' letter was incorrect or that it otherwise would not have reached GMAC").

"The common law has long recognized a rebuttable presumption that an item properly mailed was received by the addressee." *Chung v. JPMorgan Chase Bank, N.A.*, 975 F. Supp. 2d 1333, 1348 (N.D. Ga. 2013) (quoting *In re Farris*, 365 Fed. Appx. 198, 199 (11th Cir. 2010)). Here, Wells Fargo simply argues, without citing to any authority, that "Plaintiff has provided no evidence whatsoever that Wells Fargo received the Letter." (Doc. 90-1 at 7). However, as the movant for summary judgment, it is Wells Fargo's burden—not Plaintiff's—to come forward with evidence that the letter was not received. *See, e.g.*, *McLean*, 2008 U.S. Dist. LEXIS 101275, at *19 ("RESPA does not require that a party send a qualified written request through certified mail or by facsimile in order to prove receipt.").

In an affidavit attached to Wells Fargo's motion, Mallory Rohwer ("Rohwer"), Vice President of Loan Documentation for Wells Fargo, states "I have

reviewed the relevant portions of Wells Fargo's records regarding correspondence received from Plaintiff and have seen no evidence that Wells Fargo received the letter dated April 7, 2016[.]"  (Doc. 90-11 ¶ 11).  This statement, without more, is insufficient to rule out any triable issue of fact on whether Plaintiff sent the QWR letter and whether Wells Fargo received it.  *See In re Farris*, 365 Fed. Appx. at 200 ("The mere denial of receipt, without more, is insufficient to rebut the presumption."); *cf. Chung*, 975 F. Supp. 2d at 1348 (finding defendant rebutted "presumption of receipt" where the plaintiff failed to produce a copy of the QWR letter she claimed she sent and the defendant supplied detailed evidence of its procedure for handling QWR requests, which showed that it did not receive the QWR letter at issue).

Wells Fargo argues—again without providing the Court with either binding or persuasive authority—that Plaintiff's "self-serving and unsupported testimony" that she sent the April 2016 QWR letter is insufficient to create an issue of fact on whether Wells Fargo received the letter.  (Doc. 90-1 at 7).  However, here, Plaintiff's "deposition testimony . . . is enough to create a disputed issue of fact and foreclose summary judgment[,]" especially when viewed in combination with a copy of the letter she swears she sent.  *Dale v. United States*, Case No. 6:11-cv-1957-Orl-37GJK, 2013 U.S. Dist. LEXIS 83248, at *9 (M.D. Fla. June 13, 2013).  While Plaintiff's testimony that she sent the QWR may ultimately suffer when weighed

9

against Wells Fargo's evidence that it did not receive the letter, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment[.]" *Anderson*, 477 U.S. at 255.

In short, by attaching a copy of her April 2016 QWR letter to her Complaint and providing deposition testimony that she sent the letter, Plaintiff has created a genuine issue of fact on whether Wells Fargo received the letter, which Wells Fargo has failed to rebut. Drawing all reasonable inferences in Plaintiff's favor, the Court finds that a rational trier of fact could conclude Plaintiff sent her April 2016 QWR letter, and Wells Fargo received it but failed to respond. Wells Fargo is therefore not entitled to summary judgment on this element of Plaintiff's RESPA claim.

### B. <u>Damages</u>

Wells Fargo insists that even if Plaintiff could prove that Wells Fargo received her April 7, 2016 QWR letter, she has still failed to produce evidence sufficient to create an issue of fact on whether Wells Fargo's failure to respond caused her damages. (Doc. 90-1 at 9-10). Plaintiff testified in her deposition that her responses to Wells Fargo's First Interrogatories Numbers 6 and 7 contained a full and accurate description of her alleged damages and the evidence she had to support them. (Pl. Dep. at 18:7-19:16). Wells Fargo's First Interrogatory Number 6 asked Plaintiff to "[d]escribe in detail all damages that you claim you suffered as a result of Wells

Fargo's alleged failure to respond to qualified written requests you sent to Wells Fargo, whether actual or consequential, or any other type of damages which you claim you have suffered and how you calculated the amount of those damages." (Doc. 90-12 ¶ 6).  Though much of Plaintiff's response continues to allege violative conduct, as opposed to information about her damages, Plaintiff stated the following in relevant part:

> I'm going to the dr about stress and have anxiety about being put out of the home with a special needs child, being denied in 2017 for Federal employment with Federal Emergency Management Agency because of Wells Fargo reporting derogatory information on my credit report and after all of this . . . they still have not modified my loan.  Total amount of Actual Damages as of September 2018 $191,000.00. . . . This amount does not include health issues I suffered because of this.

(*Id.*).  Well's Fargo's First Interrogatory Number 7 asked Plaintiff to "[i]dentify and describe all evidence in your possession that evidences damages you claim you have suffered as a result of Wells Fargo's alleged failure to respond to a qualified written request you claim to have sent Wells Fargo on or about April 7, 2016."  (*Id.* ¶ 7). Plaintiff responded, "Shapiro, Pendergast and Hasty Notice of Default letter October 2018, Bankruptcy filed in 2016, Letter declining Federal employment[.] . . . All other information is work product protected."  (*Id.*).

"To recover actual damages under RESPA, a plaintiff 'must present specific evidence to establish a causal link between the financing institution's violation and [her] injuries.' "  *Bivens v. Select Portfolio Servicing*, Civil Action File No. 1:15-cv-

11

4325-ELR-JKL, 2017 U.S. Dist. LEXIS 221571, at * 25 (N.D. Ga. Dec. 18, 2017) (quoting *McLean v. GMAC Mortg. Corp.*, 398 Fed. Appx. 467, 471 (11th Cir. 2010) (unpublished decision)).

Here, Plaintiff has shown, by her own testimony and responses to Wells Fargo's interrogatories, that she suffered "stress and anxiety" due to Wells Fargo's failure to respond to her QWR. In the April 2016 QWR, Plaintiff requested, *inter alia*, a payment history, the total amount necessary to reinstate the loan and avoid foreclosure, an explanation of charges for a past-due amount titled "Escrow Balance" and an item titled "Other Charges," and an explanation of why a customer activity report she received omits several months' worth of overdue payments. (Doc. 1-3 at 22-23). Plaintiff attaches several of Wells Fargo's responses to her inquiries during 2016. (*See* Doc. 99-1 at 29-85). A letter dated May 17, 2016 from Leesa Whitt-Potter, Senior Vice President of Wells Fargo Home Lending, acknowledged an unidentified inquiry made by Plaintiff and stated "We expect to compete our research and provide you with the results on or before May 31, 2016." (*Id.* at 29). In a letter dated May 31, 2016, Terry Rains, a Mortgage Specialist with Wells Fargo, stated "It was our goal to respond with our results by May 31, 2016. We now expect to complete our work by June 14, 2016. We appreciate your patience as we finalize our research." (*Id.* at 30). In a two-page letter dated July 18, 2016, Nakia Steelman, Executive Resolution Specialist, stated the following in relevant part:

12

**Request for debt validation**

> We're writing in response to your recent inquiry. We received a similar request from you and sent a response on February 16, 2016.
>
> We're unable to provide any further information because your current request is too broad. If you'd like to provide us with more specific details about what you're seeking, we'll review your request again.

(*Id.* at 34). Plaintiff received an identical letter from a different Executive Resolution Specialist on August 1, 2016, likewise acknowledging her inquiry and stating that her request was "too broad." (*See id.* at 36).

The Court finds that the record contains evidence creating an issue of fact on whether Wells Fargo's failure to respond to her April 2016 QWR caused her at least some level of stress and anxiety leading to emotional damages. The correspondence the Court cites above paints a frustrating picture in which Plaintiff repeatedly sought specific information about her loan and the amount to required to reinstate it, but Wells Fargo provided no clear answers to her inquiries, instead remitting cursory letters characterizing her detailed requests as "too broad." Under those circumstances, a rational trier of fact could find that Wells Fargo's failure to respond to the specific information she requested in the April 2016 QWR letter, which occurred in the midst of this frustrating exchange of correspondence, caused her a level of stress and anxiety recoverable as emotional damages under the statute. *See James v. Litton Loan Servicing, L.P.*, Case No. 4:09-CV-147 (CDL), 2011 U.S. Dist. LEXIS 361, at *27-29 (M.D. Ga. Jan. 4, 2011) (denying summary judgment on the

13

plaintiff's RESPA claim where there was evidence the that loan servicer's failure to explain or clarify the application of their payments to principal or interest and why they were charged certain fees caused "tremendous stress"); *see also Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F. Supp. 2d 1156, 1164-65 (M.D. Ala. 1999) (recognizing recovery under RESPA for the plaintiff's "emotional distress" and "mental anguish" arising from correspondence with her loan servicer).

Wells Fargo argues that any damages Plaintiff alleges were caused by her own failure to remit payments, not by Wells Fargo's failure to respond to her QWR letter. (Doc. 90-1 at 10). However, the fact of a plaintiff's default does not foreclose the availability of emotional distress damages under RESPA. *See Alibhai v. Wilmington Trust Co.*, Civil Action File No. 1:12-CV-03755-ODE-JFK, 2013 U.S. Dist LEXIS 191708, at *39 (N.D. Ga. May 30, 2013) (recognizing non-pecuniary emotional damages caused by servicer's failure to respond to the plaintiff's QWR despite the fact that the plaintiff had already been delinquent when she sent the QWR at issue), *adopted by* 2013 U.S. Dist. LEXIS 191706 (N.D. Ga. Aug. 6, 2013). Instead, Plaintiff "must present specific evidence to establish a causal link between Wells Fargo's violation and [her] injuries." *McLean*, 398 Fed. Appx. at 471. Plaintiff's evidence of Wells Fargo's frustratingly cursory responses to her many inquiries referenced above in combination with evidence from her interrogatory response that that she was forced to seek medical treatment for stress and anxiety create, at a

minimum, a causal link between Wells Fargo's failure to respond to her April 2016 QWR letter and her emotional distress such that a jury is required to determine whether Plaintiff's damages are attributable to Well's Fargo's failure to respond. Summary judgment is therefore inappropriate as to the question of Plaintiff's damages for Wells Fargo's alleged RESPA violation.

For the reasons discussed above, the record evidence demonstrates triable issues of fact on whether Wells Fargo received Plaintiff's QWR letter and still failed to respond, and on whether Plaintiff's asserted damages were caused by that alleged failure. Resolution of this case is not suited for summary judgment.

## CONCLUSION

It is **RECOMMENDED** that Wells Fargo's Motion for Summary Judgment (Doc. 90) be **DENIED.** The Clerk is **DIRECTED** to terminate the reference to the undersigned.

**IT IS SO REPORTED AND RECOMMENDED** this 10th day of June, 2019.

/s/ J. Clay Fuller
J. Clay Fuller
United States Magistrate Judge